**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY, and GEICO CASUALTY COMPANY,<br><br>*Plaintiffs*,<br><br>v.<br><br>MOUNT PROPSECT CHIROPRACTIC CENTER, P.A. d/b/a MOUNT PROPSECT HEALTH CENTER, TERRY MCSWEENEY, D.C., HASSAN MEDICAL PAIN RELIEF AND WELLNESS CENTER, LLC, d/b/a HASSAN SPINE AND SPORTS MEDICINE and SHADY HASSAN, M.D.,<br><br>*Defendants*. | Civil Action No. 22-737<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This action arises out of allegations by Plaintiff Government Employees Insurance Company, Geico Indemnity Company, Geico General Insurance Company, and Geico Casualty Company (collectively, "GEICO") that Defendants submitted or caused to be submitted thousands of fraudulent claims for reimbursement of medical expenses. Currently pending before the Court is Defendant Hassan Medical Pain Relief and Wellness Center, LCC's and Defendant Shady Hassan's (collectively, the "Hassan Defendants") motion to dismiss. D.E. 33. The Court reviewed

the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, the Hassan Defendants' motion is **GRANTED in part and DENIED in part.**

## I. BACKGROUND[2]

Under New Jersey law, automobile insurance policies provide benefits for personal injuries sustained in an accident involving a covered automobile. *See* N.J.S.A. 39:6B-1–3; N.J.S.A. 39:6A-1 *et seq*. (collectively, the "No Fault Laws"); Compl. ¶ 22. This coverage is known as "personal injury protection" ("PIP"). *Id.* Under the No Fault Laws, the insured individual (the "Insured") can assign his or her right to PIP benefits to medical providers in exchange for those services. *Id.* ¶ 23. Pursuant to the assignment, the medical providers can then seek reimbursement from the insurance companies for the treatment if they are in compliance with all significant laws and regulations governing healthcare practice in the state of New Jersey. *Id.* ¶¶ 23-26. Here, the Hassan Defendants are such medical providers, *i.e.*, assignees of their patients' PIP benefits.

GEICO alleges that the Hassan Defendants submitted, or caused to be submitted, thousands of no-fault insurance charges to GEICO for "medically unnecessary, illusory, and otherwise non-reimbursable services." *Id.* ¶ 60. According to GEICO, the Hassan Defendants' illegal practices

---

[1] Defendants' brief in support of its motion will be referred to as "Defs. Br." (D.E. 33-1); Plaintiffs' opposition will be referred to as "Plfs. Opp." (D.E. 35); and Defendants' reply will be referred to as "Defs. Reply" (D.E. 37).

[2] The factual background is taken from Plaintiffs' Complaint (D.E. 1), as well as the exhibits attached to the Complaint (D.E. 1-1, D.E. 1-2), Defendants' Brief (D.E. 33-3), and Plaintiffs' Opposition (D.E. 35-2). When reviewing a motion to dismiss for failure to state a claim, a court accepts as true all well-pleaded facts in the Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court may also consider any document integral to or relied upon in the Complaint and take judicial notice of matters of public record. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

included (1) billing for medically unnecessary treatments; (2) billing for treatments that did not occur; (3) misrepresenting or exaggerating the medical necessity, nature, extent, and results of the healthcare services that they did provide—including, for example, the medical necessity of their EDX testing and pain management injections—and the reimbursable amount for these services; and (4) paying and receiving unlawful compensation in exchange for patient referrals to and from their co-Defendants, Mount Prospect Chiropractic Center, P.A. and Terry McSweeney, D.C. (collectively, the "Mount Prospect Defendants").

GEICO's insurance policies with its Insureds includes a "Decision Point Review Plan and Precertification Requirements" ("DPRP"), as required by N.J. Stat. Ann. § 11:3-4.7. *See* Plfs. Opp. Ex. 1 (D.E. 35-2).[3] Such plans provide the insurer with oversight and control of the payment of PIP benefits by memorializing the precertification process and internal appeals process, among other requirements. *See generally id.* GEICO's DPRP allows the assignment of benefits from the Insured to medical providers and requires that these medical providers submit any disputes arising under the DPRP to Alternative Dispute Resolution. *Id.* at 14. The relevant section of the DPRP, titled "Dispute Resolution" states in full:

> If there is a dispute *as to any issue arising under* this Decision Point Review/Precertification Plan, or *in connection with* any claim for Personal Injury Protection benefits, a request for the resolution of that dispute may be made by the Insured/Eligible Injured Person, GEICO, or a treating health care provider who has a valid Assignment of Benefits from the Insured or Insured/Eligible Injured Person. The request for dispute resolution may also include a request by any of these parties for review by a Medical Review Organization.

---

[3] GEICO's DPRP is central to the claims at issue, therefore the Court may consider it. Copies of GEICO's DPRP were provided by both parties. *See* Defs. Br. Ex. A (D.E. 33-3), Plfs. Opp. Ex. 1 (D.E. 35-2). Plaintiffs represented that Ex. 1 (D.E. 35-2) is a true and correct copy of its New Jersey DPRP, therefore the Court relies on this version of the DPRP. When citing to the DPRP, the page numbers cited correspond with those in the ECF header.

> If we, GEICO, and/or any person seeking Personal Injury Protection benefits, do not agree as to the recovery of such benefits, or with any decision made or arising pursuant to this Decision Point Review/Precertification Plan, *then the matter is required to be heard and can only be resolved by a dispute resolution organization pursuant to New Jersey law rather than filed in the Superior Court of New Jersey*. A health care provider is required to have fully complied with all aspects of this Decision Point Review/Precertification Plan, including but not limited to having fully complied with the Internal Appeal Process, prior to filing any claim or action in dispute resolution.

*Id.* at 14 (emphases added). This alternative dispute resolution requirement is also outlined in GEICO's Conditional Assignment of Benefits Form (the "CAOB Form"), which states that "as a condition precedent to GEICO's acceptance of [the Insured's] assignment," the medical provider assignee must agree to "submit disputes as defined in the Plan to the Internal Dispute Resolution process set forth therein," and "[a]fter final determination . . . submit disputes not resolved by the Internal Dispute Resolution Process to the Personal Injury Protection Dispute Resolution Process set forth in N.J.A.C. 11:3-5." *Id.* at 16. Accordingly, GEICO requires healthcare providers who were assigned benefits to raise all disputes "in connection with any claim for Personal Injury Protection benefits" in GEICO's internal dispute resolution process and then to arbitration, rather than court. *Id.* at 14, 16.

GEICO's Complaint was filed on February 10, 2022. It asserts claims against the Hassan Medical Defendants for (1) violations of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1, et seq. (the "IFPA") (Count VI); (2) violations of RICO pursuant to 18 U.S.C. § 1962(c) (Count VII)[4]; (3) common law fraud (Count VIII); and (4) unjust enrichment (Count IX). Compl. ¶¶ 500-523. GEICO seeks to recover the amount that it has paid (an amount "in excess of $125,000") on the allegedly fraudulent PIP claims that the Hassan Defendants submitted, or caused

---

[4] Count VII is only asserted against Defendant Shady Hassan.

4

to be submitted, between "2019 through the present." *See id.* ¶¶ 475, 524. GEICO also seeks a declaratory judgment against Hassan Medical Pain Relief and Wellness Center, LLC, stating in effect that it was not in compliance with all relevant laws and regulations during the relevant period (Count I). ¶¶ 471-475.

## II. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") "makes agreements to arbitrate enforceable to the same extent as other contracts." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999) (citation omitted). As a result, "federal law presumptively favors the enforcement of arbitration agreements." *Id.* at 178 (citing *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 231 (3d Cir. 1998)). Unless otherwise agreed, the arbitrability of a dispute is generally a question for judicial determination. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Moon v. Breathless Inc.*, 868 F.3d 209, 212–13 (3d Cir. 2017) (citation omitted). Accordingly, the Court applies the law of this forum—New Jersey contract law—in determining whether the dispute is arbitrable. *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288-89 (3d Cir. 2017).

Although the Hassan Defendants' motion is styled as a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, motions that seek dismissal on the ground that arbitration is required are not jurisdictional, as they raise a defense to the merits of an action.[5]

---

[5] The Hassan Defendants' motion is framed as a "motion to dismiss pursuant to Rule 12(b)(1) or Rule 12(b)(6) (or otherwise compel arbitration)." *See* Defs. Br. at 3. But the Hassan Defendants do not argue that GEICO's claims are not adequately pled. Accordingly, the Court only considers dismissal based on the arbitrability of the claims at issue.

*Liberty Mut. Fire Ins. Co. v. Yoder*, 112 F. App'x 826, 828 (3d Cir. 2004) (citation omitted). As such, the Court treats the motion as a motion to compel arbitration. On a motion to compel arbitration, the Court must consider two threshold questions: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998); *see also CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014).

In *Guidotti v. Legal Helpers Debt Resolution, LLC*, the Third Circuit explained how courts should determine the proper standard to apply to a motion to compel arbitration. 716 F.3d 764 (3d Cir. 2013). ""[W]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint)," the FAA favors resolving a motion to compel arbitration under a motion to dismiss standard. *Id.* at 773-74 (internal quotation marks and citations omitted). The motion to dismiss standard will only be replaced by the motion for summary judgment standard if (1) the complaint—and documents relied on in the complaint—are unclear regarding whether the parties agreed to arbitrate; or (2) the non-moving party "has responded . . . with additional facts sufficient to place the agreement to arbitrate in issue." *Id.* at 774-76. In such a scenario, "the court may authorize 'limited discovery' to resolve that narrow issue for purposes of deciding whether to submit the matter to arbitration." *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 406 (3d Cir. 2020) (citing *Guidotti*, 716 F.3d at 776).[6]

---

[6] The Hassan Defendants argue that the claims are arbitrable under the motion to dismiss standard. GEICO does not directly challenge the Court's application of this standard. Nevertheless, because GEICO comes forward with an argument regarding the validity of the assignment (and in turn, the agreement)—an argument that a non-moving party may raise to replace the motion to dismiss

Here, as explained below, the motion to dismiss standard applies. For a complaint to survive dismissal under Rule 12(b)(6), it must contain enough factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (citation omitted). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### III. ANALYSIS

The Hassan Defendants argue that dismissal is warranted because GEICO's claims are subject to arbitration under both the No-Fault Law and GEICO's DPRP. The Court follows the approach of other courts in this District and examines the arbitrability of the claims individually, beginning first with GEICO's non-IFPA claims—the RICO, common law fraud, and unjust

---

standard with the motion for summary judgment standard—the Court addresses the distinctions between these standards and considers which standard is appropriate to apply here.

enrichment claims —before addressing the other claims. *See*, *e.g.*, *Gov't Emps. Ins. Co. v. Stelton Radiology Corp.*, No. 20-18532, 2022 WL 1486116, at *7-8 (D.N.J. May 11, 2022) (*Stelton I*), *opinion vacated in part on reconsideration on other grounds*, No. 20-18532, 2022 WL 7991093 (D.N.J. Oct. 14, 2022) (examining whether each individual claim must be dismissed for arbitration).

### A. GEICO's RICO, Common Law Fraud, and Unjust Enrichment Claims

The Court first analyzes whether GEICO's RICO, common law fraud, and unjust enrichment claims are subject to arbitration under the No-Fault Law before turning to its analysis under the DPRP. The No-Fault Law is intended to reduce the number of PIP claims contested in court. *Stelton I*, 2022 WL 1486116, at *5. It provides as follows:

> Any dispute regarding the recovery of medical expense benefits or other benefits provided under personal injury protection coverage . . . arising out of the operation, ownership, maintenance or use of an automobile may be submitted to dispute resolution on the initiative of any party to the dispute, as hereinafter provided.

N.J. Stat. Ann. § 39:6A-5.1(a). The Act defines the types of disputes for which arbitration is required, including, in relevant part, "whether the treatment or health care service which is the subject of the dispute resolution proceeding is in accordance with" applicable law; "eligibility of the treatment or service for compensation;" "eligibility of the provider performing the treatment or service to be compensated under the terms of the policy or under regulations promulgated by the commissioner;" "whether the disputed medical treatment was actually performed;" "the necessity or appropriateness of consultations by other health care providers;" "disputes involving application of and adherence to fee schedules;" and "whether the treatment performed is reasonable, necessary, and compatible with the protocols provided." N.J.S.A. § 39:6A-5.1(c).

8

The Hassan Defendants argue that GEICO's RICO, common law fraud, and unjust enrichment claims must be arbitrated because they "are predicated on an allegation that the Hassan Defendants were not eligible to receive PIP benefits due to their alleged non-compliance with State regulations," and "[t]he statute expressly identifies" disputes about "the eligibility of the treatment or service compensated for" and "the eligibility of the provider performing the treatment or service to be compensated." Defs. Br. at 12. They add that the No-Fault Law's arbitration requirements are meant to be read broadly and argue that GEICO cannot circumvent these requirements by repackaging its PIP-related disputes as fraud claims. *Id.* at 13-16 (citing *Gov't Emps. Ins. Co v. Elkholy*, No. 21-16255, 2002 WL 2373917 (D.N.J. June 30, 2022)).[7] GEICO counters that such arguments contradict the overwhelming weight of authority in this District and the State of New Jersey, which holds that the No-Fault laws do not require arbitration of fraud-based claims arising from PIP-related insurance fraud schemes like the scheme alleged here. *See* Plfs. Opp. at 7-9.[8]

---

[7] The Hassan Defendants also cite *Gov't Emps. Ins. Co. v. MLS Med. Grp., LLC* in support of this argument; however, this case is not persuasive because the IFPA, RICO, common law fraud and unjust enrichment claims were dismissed in that matter on the ground that they were not adequately pled—not because the Court found that such claims were subject to arbitration. No. 12-7281, 2013 WL 6384652, at *8-11.

[8] GEICO directs the Court to the following examples, among others, that declined to arbitrate RICO, common law fraud, unjust enrichment, or other fraud-based claims under the No-Fault Law's arbitration provision: *Stelton I*, 2022 WL 1486116, at *5 ("[T]he statutory arbitration scheme is meant to stop routine PIP claims from clogging the courts, not to prevent insurers from pursuing broader fraud and racketeering allegations in court."); *Gov't Emps. Ins. Co. v. Adams Chiropractic Ctr. P.C.*, No. 19-20633, 2020 WL 881514, at *1 n.3 (rejecting the defendants' arguments that the claims were subject to arbitration because "it is well-established that NJIFPA, RICO or common law fraud claims are not subject to mandatory arbitration under New Jersey's no-fault insurance statute."); *Gov't Emps. Ins. Co. v. Reg'l Orthopedic Prof'l Ass'n*, No. 17-1615, 2017 WL 5986964, at *1 (D.N.J. Dec. 1, 2017) ("Although state law requires that any dispute regarding the recovery of medical expense benefits under PIP be arbitrated, [] [the] [plaintiffs'] [IFPA, RICO, and other fraud-based] allegations go beyond such dispute, and may be adjudicated in this Court.").

The weight of authority indicates that fraud-based claims arising from PIP-related insurance fraud schemes are not subject to arbitration because such allegations "go beyond" the type of routine PIP disputes for which arbitration is mandatory under the No-Fault Law. *Gov't Emps. Ins. Co. v. Reg'l Orthopedic Pro. Ass'n*, No. 17-1615, 2017 WL 5986964, at *1 (D.N.J. Dec. 1, 2017); *see also Stelton I*, 2022 WL 1486116, at *5 (declining to find that the fraud-based claims were arbitrable under the No-Fault Law because "the statutory arbitration scheme is meant to stop routine PIP claims from clogging the courts, not to prevent insurers from pursuing broader fraud and racketeering allegations in court."); *Gov't Emps. Ins. Co. v. Adams Chiropractic Ctr. P.C.*, No. 19-20633, 2020 WL 881514, at *1 n.3 (D.N.J. Feb. 24, 2020) ("[I]t is well-established that NJIFPA, RICO or common law fraud claims are not subject to mandatory arbitration under New Jersey's no-fault insurance statute[.]" But Judge Shipp recently reached a different conclusion in *Elkholy*. *See Elkholy*, 2022 WL 2373917 at *6-7. After considering the plain language and purpose of the No-Fault Law—which demonstrated an intent to "encompass[] a broad array of legal disputes regarding PIP benefits," and a "firm policy favoring prompt and efficient resolution . . . without resort to the judicial process"—the court concluded that GEICO's non-IFPA claims (RICO, common law fraud, and unjust enrichment) were subject to arbitration under the No-Fault Law. *Id.* The *Elkholy* court reasoned that it had "yet to uncover a persuasive basis" for existing case law in this district to the contrary, and that in light of the plain meaning and purpose of the statute, it "seem[ed] arbitrary to distinguish a scenario where medical providers inadvertently bill an insurance company for PIP Benefits through unnecessary or unperformed medical procedures and a scenario where they fraudulently do so," because "[t]he two situations are identical but for the intent." *Id*.

Here, the Court need not determine whether a distinction based on *mens rea* is appropriate, *see id.*, or whether GEICO's allegations of a large, overarching fraud scheme (which requires GEICO to offer proof of voluminous records in otherwise unrelated cases) "go beyond" disputes covered by the No-Fault Laws,[9] because the Court finds that GEICO's DPRP is controlling on the issue of arbitrability of these claims. As noted, in evaluating whether a given claim is subject to an arbitration agreement, the Court addresses two issues: (1) whether the parties seeking or resisting arbitration entered into a valid arbitration agreement; and (2) whether the dispute between those parties falls within the language of the arbitration agreement. *John Hancock Mut. Life Ins. Co.*, 151 F.3d at 137. The Court must also determine whether the Rule 12(b)(6) motion to dismiss standard or the Rule 56 summary judgment standard is appropriate. The motion to dismiss standard applies here because the affirmative defense of arbitrability is apparent on the face of the Complaint and the documents relied upon in the Complaint. GEICO alleges that the Hassan Defendants received payment on fraudulent PIP claims, and a prerequisite to receiving such payments is execution of GEICO's CAOB Form, which requires assignees to agree to submit any disputes "arising under" the DPRP or "in connection with any" PIP claims to arbitration. *See generally* Compl.; *see also* Plfs. Opp. Ex. 1 at 14, 16 (D.E. 35-2). And GEICO, the non-moving party, has not come forward with "additional facts sufficient to place the agreement to arbitrate in issue." *Guidotti*, 716 F.3d at 774-76. GEICO merely argues that the Hassan Defendants lack

---

[9] Indeed, "the statutory arbitration scheme is meant to stop routine PIP claims from clogging the courts, not to prevent insurers from pursuing broader fraud and racketeering allegations in court." *Stelton I*, 2022 WL 1486116, at *5; *cf. Allstate Ins. Co. v. Lopez*, 710 A.2d 1072, 1080-81 (N.J. Super. Ct. Law Div. 1999) (acknowledging, albeit in the context of a declaratory judgment claim related to a fraud scheme involving over 400 defendants, that the arbitration forum was inadequate given the nature and scope of the allegations, the relief sought, and the case management complexities, among other considerations). However, the Court must also be vigilant against propping up PIP-related disputes as fraud claims.

standing to invoke the DPRP's arbitration provisions because the Hassan Defendants "have not, and they cannot," demonstrate that they obtained a valid assignment of PIP benefits using the required CAOB forms. Plfs. Opp. at 16. But because the defense of arbitrability is "apparent" from the Complaint (and the documents on which it relies), it is GEICO's burden to "respond . . . with [] facts sufficient to place the agreement to arbitrate in issue."[10] *Guidotti*, 716 F.3d at 774-76. GEICO's "naked assertions" as to the validity of the assignment (and thus the ability to invoke the arbitration provision), without more, do not suffice. *Id.* at 774; *cf. Par-Knit Mills v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 55 (3d Cir. 1980) (judging the arbitrability of the claims under the summary judgment standard where the plaintiff presented "[a]n unequivocal denial that the [arbitration] agreement had been made").[11]

---

[10] GEICO attempts to shift the burden to the Hassan Defendants by selectively quoting from *James v. Glob. Tel*Link Corp.*, No. 13-4989, 2016 WL 589676, at *3 (D.N.J. Feb. 11, 2016), *aff'd sub nom*. *James v. Glob. Tel*Link Corp*, 852 F.3d 262 (3d Cir. 2017) and *Par-Knit Mills v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 55 (3d Cir. 1980). *See* Plfs. Opp. at 15. But both *James* and *Par-Knit Mills* appear to address the burden-shifting framework under the Rule 56 standard. *See James*, 2016 WL 589676, at *3 (citing *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 519 (3d Cir. 2007) (applying the summary judgment standard to the motion to compel arbitration)); *Par-Knit Mills*, 636 F.2d at 55 (considering the motion to compel under the summary judgment standard where the plaintiff presented "[a]n unequivocal denial that the agreement had been made, accompanied by supporting affidavits," rather than "naked assertion[s] . . . that it did not intend to be bound by the terms.").

[11] Moreover, as the court in *Elkholy* held, GEICO's argument fails because "by paying [the] [d]efendants the underlying PIP Benefits at issue in this suit, [] GEICO [] effectively recognized the validity of the PIP assignments, and [] cannot now attempt to argue otherwise." *Elkholy*, 2022 WL 2373917, at *8 (citing *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, No. 11-425, 2012 WL 1135608, at *8 n.3 (D.N.J. Apr. 4, 2012) ("[Plaintiffs] cannot act as though valid assignments exist through course of conduct and then challenge the assignment's very existence in litigation."); *Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 06-0462, 2007 WL 4570323, at *3-4 (ruling that the defendant-insurer's course of conduct, which recognized the validity of the assignment of insurance benefits to plaintiff-provider, relinquished defendant-insurer's right to enforce its anti-assignment clause)). GEICO cannot distinguish *Elkholy* from the facts here, *see* Plfs. Opp. at 16 n.7, because while the court in *Elkholy* acknowledged that GEICO waited until the "eleventh hour" to challenge the validity of the assignment, that was not the reason

Because the Court is proceeding under the motion to dismiss standard, the "question to be answered . . . becomes whether the assertions of the complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis" for rejecting the affirmative defense. *Guidotti*, 716 F.3d at 774 (quoting *Leone v. Aetna Cas. & Sur. Co.,* 599 F.2d 566, 567 (3d Cir. 1979)). Here, GEICO's Complaint is devoid of any allegations as to the validity of the assignment. In fact, the Complaint concedes that an assignee may only submit claims and receive payment "[p]ursuant to a duly executed assignment." Compl. ¶ 23. And as the Hassan Defendants note, GEICO paid them on 369 claims between October 2019 to May 2021, thus by their "own admission in the Complaint, [GEICO] must have received the CAOBs—or at least a form of assignment document acceptable to GEICO"—to have made the payments that it now seeks to recover. Defs. Reply at 2-4 (citing Compl. ¶¶ 23, 509, 515, 524(F); Compl. Ex. 2 (D.E. 1-2); Defs. Reply Ex. A at 1 (D.E. 37-2)). As such, the Court finds that the parties entered into a valid arbitration agreement.

The Court turns to the next issue: whether GEICO's claims fall within the scope of that agreement. The Hassan Defendants argue that the claims fall within the purview of the arbitration provision because this provision broadly provides that "'any issue arising under this [DPRP]' or 'in connection with any claim for [PIP] Benefits'" "'is required to be heard and can only be resolved by a dispute resolution organization" under New Jersey law." Defs. Br. at 26 (citing Def. Br. Ex. A (D.E. 33-3)). GEICO does not appear to raise any arguments to the contrary. Moreover, any such arguments would likely be unpersuasive as "New Jersey courts have read both phrases, 'arising out of' and 'in connection with,' to mandate arbitration in almost all cases." *Stelton I*,

---

that the court rejected GEICO's argument. *See Elkholy*, 2022 WL 2373917, at *8 ("[E]ven ignoring the untimely submission," GEICO's course of conduct effectively recognized the validity of the PIP assignments; thus GEICO could not now argue otherwise.").

2022 WL 1486116, at *6 (citations omitted).  Accordingly, because the arbitration agreement is valid and GEICO's RICO, common law fraud, and unjust enrichment claims "arise out of" or are "in connection with" PIP benefits, such claims are dismissed as arbitrable under DPRP's arbitration clause.  *See id.* (finding that GEICO's RICO, fraud, and unjust enrichment claims were arbitrable under the DPRP's arbitration clause); *see also Elkholy*, 2022 WL 2373917 at *9 (same).

Nevertheless, the Court grants GEICO's request for leave to amend its Complaint to make "clear" its arguments regarding the validity of the agreement.  D.E. 38 (citing Plfs. Opp. at 24); *see also* Plfs. Opp. at 24.[12]  Any contentions to this effect, however, must surpass the bare legal conclusions that GEICO raised in its opposition.

### B. GEICO's IFPA Claim

The Court next considers whether GEICO's IFPA claim is subject to mandatory arbitration under either the No-Fault Law or GEICO's DPRP.  At the outset, the Hassan Defendants concede that existing case law finds that IFPA claims are exempt from arbitration under both the No-Fault Law and contractual agreements, such as the DPRP.  Nevertheless, they ask the Court to find that such case law is "misguided" and "erroneous."  *See e.g.*, Defs. Br. at 17, 27.  The Court declines to do so.

---

[12] In support, GEICO cites *Gov't Emps. Ins. Co. v. Stelton Radiology Corp.*, No. 20-18532, 2022 WL 7991093, at *7 (D.N.J. Oct. 14, 2022) ("*Stelton II*").  In *Stelton II*, GEICO argued for the first time in its motion for reconsideration that the defendant-providers did not have valid assignments of PIP benefits and thus lacked standing to compel arbitration.  *Id.* at *6.  The court noted that this argument came "out of left field" and declined to reconsider on these grounds.  *Id.*  Nevertheless, because the court "already granted leave to amend the complaint" on other grounds, it stated that any proposed second amended complaint could include a contention along these lines.  *Id.* at *7.  The court warned, however, that GEICO must "do better than" the allegation proposed in its brief, which the court considered to be futile because it was "a bare legal conclusion."  *Id.*

The IFPA provides that an "insurance company damaged as the result of a violation of any provision of this act may sue therefor in any court of competent jurisdiction." N.J. Stat. Ann. § 17:33A–7(a).  As such, courts in this District and the State of New Jersey repeatedly find that "the Legislature did not contemplate that a claim of a violation of the Insurance Fraud Prevention Act would be heard by an arbitrator." [13]  *Nationwide Mut. Fire Ins. Co. v. Fiouris*, 928 A.2d 154 (App. Div. 2007) (citation omitted); *see also Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 492 (D.N.J. 2018) ("The NJIFPA is not preempted by PIP arbitration rules.").  In reaching this conclusion, courts have also considered the fact that the IFPA was enacted later in time than the No-Fault Law, "therefore [the IFPA] could have provided a carve out for PIP Benefits disputes but did not." *Elkholy*, 2022 WL 2373917, at *10.  Moreover, in light of the "strong legislative intent to categorically require judicial resolution of all [] IFPA claims," courts also "routinely uphold the IFPA's absolute mandate for judicial resolution *notwithstanding contractual clauses* that would otherwise require arbitration of IFPA claims." *Id.* (emphases added).

In *Fed. Ins. Co. v. von Windherburg-Cordeiro*, the court explained that the plaintiff's IFPA claim was not arbitrable because based on the structure and history of the IFPA statute, "state law requires [the] [plaintiff's] IFPA claim be brought in a judicial forum" even when a contractual

---

[13] The Hassan Defendants contend that these courts are mistaken on the ground that "may" should be read as permissive rather than mandatory. But as the Court in *Stelton I* recognized, the "precedent is conclusively to the contrary." 2022 WL 1486116, at *7 n.5.  The Hassan Defendants also argue that the precedent fails to distinguish between IFPA claims that are premised on a challenge to the validity of the policy and IFPA claims that are premised on an entitlement to PIP benefits (such as those alleged here), the latter of which the Hassan Defendants argue are subject to arbitration under the No-Fault Law.  *See* Defs. Br. at 22-24 (citing *Nationwide Mut. Fire Ins. Co. v. Fiouris*, 395 928 A.2d 154 (N.J. Super Ct. App. Div. 2007)).  But as GEICO notes, other courts considering arbitrability of claims related to PIP-benefits have held that such claims are not subject to arbitration, regardless of this distinction.  Plfs. Opp. at 8-9 n.3 (citing *Allstate New Jersey Ins. Co. v. Lajara*, 222 N.J. 129, 143 (N.J. 2015) (finding, in the context of IFPA claims involving PIP-recovery disputes, that the state constitutional right to a jury nevertheless applied)).

arbitration clause is present that would otherwise encompass the claim.  No. 12-2491, 2012 WL 6761877, at *4 (D.N.J. Dec. 31, 2013).  The court acknowledged that "the FAA establishes a national policy favoring arbitration that can displace state law when parties contract for that manner of dispute resolution," but found that the FAA's effect was limited in this context by the McCarran-Ferguson Act.  *Id.* (citing 15 U.S.C. § 1012(b)).  Under the McCarran-Ferguson Act, "state insurance laws 'reverse preempt' contrary federal laws," if (1) the pertinent statue statute was enacted for the purpose of regulating the business of insurance; (2) the federal statute does not specifically relate to the business of insurance; and (3) the federal statute would invalidate, impair, or supersede the state statute.  *Id.* (citing *Suter v. Munich Reins. Co.*, 233 F.3d 150, 160 (3d Cir. 2000).  Finding that (1) the IFPA was enacted for the purpose of regulating the business of insurance; (2) the FAA was not; and (3) the FAA would invalidate, impair, or supersede the state statute, the court concluded that the FAA does not supersede the IFPA, notwithstanding the contractual agreement.  *von Windherburg-Cordeiro*, 2012 WL 6761877, at *4; *see also Stelton I*, 2022 WL 1486116, at *7 (rejecting the defendants' contention that "if the NJIPA trumps the contract, the Federal Arbitration Act trumps the NJIFPA," because "the preemptive effect of the FAA is nullified in these circumstances by the McCarran-Ferguson Act," therefore the court "must follow the precedents which clearly state that NJIFPA claims cannot be arbitrated."); *Elkholy*, 2022 WL 2373917, at *10-11 (rejecting the defendants' "attempt to shoehorn the [plaintiffs'] IFPA claim into arbitration" by arguing that it is arbitrable pursuant to the parties' agreement because "[a]bsent the FAA forcing arbitration, the IFPA controls and mandates judicial resolution.").

The Court agrees with this line of reasoning.  The Hassan Defendants counter that the Court should ignore the case law to the contrary and find that the IFPA claim is arbitrable because "New Jersey and federal courts consistently find that statutory claims with provisions like [IFPA] are

16

subject to contractual arbitration." Defs. Br. at 27. This argument is unpersuasive because it relies solely on cases that do not involve reverse-preemption of the FAA. *Id.* Here, state law requires that the IFPA claim be brought in a judicial forum, and the FAA does not displace state law because the IFPA statute satisfies the factors for reverse preemption under the McCarran-Ferguson Act. *See, e.g., von Windherburg-Cordeiro*, 2012 WL 6761877, at *4; *Stelton I*, 2022 WL 1486116, at *7; *Elkholy*, 2022 WL 2373917, at *10-11. Accordingly, the Court declines the Hassan Defendants' invitation to depart from the weight of authority that finds that IFPA claims are not subject to arbitration under the No-Fault Laws or contractual agreements. As such, the Court retains jurisdiction over the IFPA claim.

### C. GEICO's Declaratory Judgment Claim

GEICO seeks a declaration that "from 2019 through the present, Hassan Medical was not in compliance with all significant laws and regulations governing healthcare practice in New Jersey." Compl. ¶ 475. The Court "possess[es] discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls* Co., 515 U.S. 277, 282 (1995) (citation omitted). Accordingly, the Court may exercise that discretion and dismiss declaratory judgment claims where the judgment sought is "duplicative or redundant of other claims." *Elkholy*, 2022 WL 237917, at *12 (internal quotation marks and citation omitted). Because the Court retains the IFPA claim and thus will determine whether Hassan Medical violated the IFPA, the Court declines to "make a duplicitous finding on the same issue under the guise of a declaratory judgment action." *Id.* (citations omitted); *see also Maniscalco v. Brother Intern. Corp. (USA),* 627 F.Supp.2d 494, 504-05 (D.N.J. 2009) (dismissing declaratory judgment claim where the declaration sought would be duplicative of a favorable finding on their other claim); *Mladenov v.*

17

*Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 379 (D.N.J. 2015) (dismissing declaratory judgment claim as redundant). To the extent that GEICO seeks a declaration that Hassan Medical violated RICO, committed common law fraud, or are liable for unjust enrichment, an arbitrator shall decide that issue. *See Elkholy*, 2022 WL 237917, at *12 (reaching the same conclusion).

## IV.   CONCLUSION

For the reasons stated above, the Hassan Defendants' motion to dismiss, D.E. 33, is **GRANTED** in part and **DENIED** in part. An appropriate Order accompanies this Opinion.

Dated: February 17, 2023

_____
John Michael Vazquez, U.S.D.J.